UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                  :

Cat 3, LLC, SXH, LLC, and Suchman, LLC,      :      **Document Electronically Filed**

                         Plaintiffs,          :      Civil Case No. 14-cv-5511 (AT)

            - against -                         :

BLACK LINEAGE, INC., and VAHE          :
ESTEPANIAN a/k/a FLETCH ESTEPANIAN,  :

                       Defendants.       :

------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
Tel: 213.488.7100
Richard H. Zaitlen (*Admitted Pro Hac Vice*)
Jennifer A. Seigle (*Admitted Pro Hac Vice*)

Attorneys for Defendants Black Lineage, Inc., and
Vahe Estepanian a/k/a Fletch Estepanian

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION ................................................................................................. 1 | |
| II. | | STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................. 2 | |
| III. | | ARGUMENT ........................................................................................................ 5 | |
| | A. | Legal Standard ......................................................................................... 5 | |
| | B. | Terminating Sanctions are Warranted for Plaintiffs' and Counsel's Misconduct .. 7 | |
| | C. | If the Court Does Not Dismiss Plaintiffs' Claims, Preclusion and an Adverse Instruction are Necessary ........................................................................ 13 | |
| | D. | In Any Event, Plaintiffs Must Pay Defendants' Costs and Reasonable Attorneys' Fees ........................................................................................ 14 | |
| IV. | | CONCLUSION .................................................................................................. 14 | |

# Table of Authorities

## Cases

*535 Broadway Associates v. Commercial Corporation of America*
   159 B.R. 403 (S.D.N.Y.1993) ........................................................................................ 8

*Chambers v. NASCO, Inc.*
   501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ................................................ 7, 9, 17

*Communispond, Inc. v. Kelley*
   No. 96 CIV. 1487 (DC), 1998 WL 473951 (S.D.N.Y. Aug. 11, 1998) ........................... 13, 14

*Gutman v. Klein*
   No. 03CV1570(BMC)(RML), 2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008)
   (report and recommendation adopted, No. 03 CIV. 1570 (BMC), 2008 WL
   5084182 (E.D.N.Y. Dec. 2, 2008)) ................................................................... 11, 12, 14, 16

*Jones v. Niagara Frontier Transp. Auth. (NFTA)*
   836 F.2d 731 (2d Cir. 1987) .......................................................................................... 8

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l
Union*
   212 F.R.D. 178 (S.D.N.Y. 2003) ............................................................................... 13, 14

*Miller v. Time–Warner Communications, Inc.*
   No. 97 Civ. 7286, 1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) ................................... 13, 14

*Milliken & Co. v. Bank of China*
   758 F.Supp.2d 238 (S.D.N.Y.2010) ............................................................................... 16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*
   No. 98 Civ. 10175, 2002 WL 59434 (S.D.N.Y. Jan. 16, 2002) ........................................ 9

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*
   No. 13 CIV. 2493 KBF, 2014 WL 3844796 (S.D.N.Y. Aug. 5, 2014) ................. 7, 10, 11, 15

*West v. Goodyear Tire & Rubber Co.*
   167 F.3d 776 (2d Cir.1999) ........................................................................................ 8, 16

## Rules and Regulations

Federal Rules of Civil Procedure
   Rule 26 ................................................................................................................. passim
   Rule 26(g) ..................................................................................................................... 8
   Rule 30(b)(6) ................................................................................................................ 5
   Rule 37 ................................................................................................................. passim
   Rule 37(e) .................................................................................................................. 5, 7

Defendants Black Lineage, Inc. and Vahe Estepanian a/k/a Fletch Estepanian (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of Defendants' Motion for Sanctions.

I. **INTRODUCTION**

This motion is necessary because Plaintiffs Cat 3, LLC, SXH, LLC, and Suchman, LLC (collectively, "Plaintiffs") have demonstrated that they will do whatever it takes to win this case, including alteration and production of falsified and doctored emails in an attempt to gain an advantage in this litigation.

Plaintiffs in this case have accused Defendants of willfully infringing the SLAMXHYPE trademark when Defendants adopted the FLASHXHYPE mark. A key issue in this case is whether Defendants were aware of Plaintiffs' asserted SLAMXHYPE trademark prior to adopting the FLASHXHYPE trademark. In order to attempt to prove such awareness, Plaintiffs doctored a number of emails to and from Defendants during the relevant period. In those emails, Defendants had communicated with Plaintiffs' employees through Plaintiffs' email addresses ending in "@ecko.com." Defendants produced emails showing this to have been the case. Plaintiffs, on the other hand, in an attempt to prove something that did not happen, intentionally replaced the "@ecko.com" portion of some of those emails addresses with "@slamxhype.com" email addresses. Plaintiffs then produced these falsified emails in discovery, and attempted to use them as "legitimate" versions of the emails in question in an effort to prove Defendants' awareness of the SLAMXHYPE name before Defendants' adoption of the FLASHXHYPE mark.

Defendants' forensic computer expert, Michael Kunkel, reviewed Plaintiffs' document production and concluded that such alterations were performed intentionally, and manually, by Plaintiffs. From his review, it appeared that Plaintiffs attempted to destroy the original emails

and replace them with emails displaying the "@slamxhype.com" email addresses. However, the original emails were still visible to Mr. Kunkel and he was able to uncover Plaintiffs' deception.

Plaintiffs' counsel compounded the misdeeds by using the altered emails as exhibits in the deposition of Mr. Estepanian, despite knowing that they were not authentic. Plaintiffs' counsel questioned Mr. Estepanian on the emails, seeking his admission that he had sent to or received emails from the "@slamxhype.com" email addresses. However, Defendants had produced the same emails in discovery, each of which displayed the "@ecko.com" email addresses to which Defendants addressed, or from which Defendants received, the emails in question. Plaintiffs' counsel, therefore, knew that Plaintiffs' emails were altered. Rather than attempt to reconcile the differences in the emails before examining Mr. Estepanian on the doctored documents, Plaintiffs' counsel proceeded in hopes that Mr. Estepanina would not notice the altered email addresses.

Defendants accordingly seek sanctions against Plaintiffs and their counsel, under Fed. R. Civ. P. 26 and 37 and this Court's inherent authority, for spoliation of evidence in the form of alteration of the emails and attempting to pass them off as legitimate emails. Defendants believe terminating sanctions are warranted because of the willful and egregious nature of the misconduct by Plaintiffs and their counsel. Defendants defer to the Court, of course, in determining the appropriate remedy. In any event, Plaintiffs and/or their counsel should pay the reasonable costs and attorneys' fees incurred by Defendant as a result of Plaintiffs' misconduct.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This is a trademark case in which Plaintiffs have alleged infringement of their purported SLAMXHYPE trademark by Defendants' willful adoption of the FLASHXHYPE trademark and emulation of Plaintiffs' website and business practices. Plaintiffs' allegations in the operative First Amended Complaint make clear that this case centers on when Defendants first became

2

aware of the SLAMXHYPE trademark and website. *See* Dkt. 11 (First Amended Complaint) at ¶ 33 ("employees of Marc Ecko Enterprises and/or The Collective specifically made Defendant Estepanian aware that Plaintiffs had acquired the rights in and to the trademark SLAMXHYPE and the SLAMXHYPE Website…All of this occurred prior to the date that Defendants acquired the www.FLASHXHYPE domain name and/or otherwise adopted the trademark FLASHXHYPE."); ¶ 34 ("Defendants used such information for purposes of developing a trademark, FLASHXHYPE, that would confuse consumers and falsely convey an association with Plaintiffs and their trademark SLAMXHYPE."); ¶ 35 ("after one or more employees of Plaintiffs…had disclosed to Defendant Estepanian Plaintiffs' plans to rebrand their business as SLAMXHYPE, Defendant Black Lineage registered the domain name www.FLASHXHYPE.com."). These allegations make clear that whether Defendants were aware of Plaintiffs' use of the SLAMXHYPE mark prior to adopting the FLASHXHYPE name and website is the most critical fact in this case.

In discovery, Plaintiffs sought communications between the parties. On or about February 18, 2015, Defendants produced emails, including those during the relevant time period. *See* Declaration of Richard Zaitlen in Support of Motion for Sanctions ("Zaitlen Decl.") at ¶ 3, Ex. A. Those emails demonstrate that Defendants sent emails to Plaintiffs' employees <u>exclusively</u> at their "@ecko.com" email addresses and received emails from those employees <u>exclusively</u> from their "@ecko.com" email addresses during the relevant timeframe.

During the April 8 and 9 deposition of Mr. Estepanian, Plaintiffs' counsel introduced as an exhibit emails that Plaintiffs had produced in discovery. *See* Zaitlen Decl., ¶ 4, Ex. B (April 8, 2015 Deposition of Vahe Estepanian) at 201. These emails are similar to the emails produced by Defendants, <u>except</u> instead of showing "@ecko.com" email addresses, they display

3

"@thecollective.com" and "@slamxhype.com" email addresses. Mr. Estepanian testified that the emails he sent and received, and produced in discovery, all displayed the "@ecko.com" email. See Zaitlen Decl., ¶ 5, Ex. C (April 9, 2015 Deposition of Vahe Estepanian) at 158-175 ("What's odd to me is when I'm being asked questions about an email that I would have never seen except in discovery -- this is not the email that was sent. It didn't come from those email addresses. It didn't go to those email addresses."); ("but what is I guess misleading is making the claim that the email was sent to slamxhype.com or trying to imply that the email was sent to slamxhype.com by producing these documents and not mentioning that there may have been some sort of change happening at the Ecko offices.").

Given the discrepancies in the email addresses, counsel for Defendants sought Plaintiffs' emails in native format. Zaitlen Decl. at ¶ 6, Ex. D. Months and months after this request was made, and following a Court Order (*see* Zaitlen Decl., ¶ 8, Ex. F), Plaintiffs' third counsel[1] transferred the native emails to Defendants' counsel, who downloaded them. They were ultimately provided to a forensic computer expert, Michael Kunkel.

Mr. Kunkel and his team conducted a technical analysis of the emails on August 18, 2015. See Declaration of Michael Kunkel in Support of Motion for Sanctions ("Kunkel Decl.") at ¶ 6. His analysis showed that each email appeared as two versions in the production. The "top" version shows the message in full along with full sender and recipient information and the date and time of each message received. *Id.* at ¶ 7. Behind each message is a near-duplicate copy of the message, with the only difference being the changes of certain email domains that appear for some of the senders and recipients of the emails. *Id.* at ¶ 8. The near duplicate

---

[1] Plaintiffs' initial counsel was replaced on December 3, 2014 (ECF. 22). Plaintiffs' second counsel, to whom the original request for the native email files was made, and who took the deposition of Mr. Estepanian, was replaced on July 20, 2015 (ECF 34) by Plaintiffs' third and present counsel.

4

messages that appear behind each message were deleted versions of the original email messages. In the deleted emails, the email address domains for Plaintiffs are all "@ecko.com." *Id.* at ¶¶ 9-10. However, in the top version (i.e., the replacement version), the sender and recipient information is replaced by a technical string of information, calling into question the authenticity of the replacement emails. *Id.* The altered versions were then produced to Defendants. *Id.* at ¶ 11. The versions produced by Plaintiffs that include the "@slamxhype.com" email addresses were not in the original emails – in the deleted original emails, Plaintiffs' email addresses all contain "@ecko.com." *Id.* at ¶ 12. This discrepancy was the result of intentional human action, not an automatic or inadvertent computer process. *Id.* at ¶ 13. There is no reason that the emails produced by Plaintiffs would show for the sender or recipient a different email domain from Defendants' version of the email, unless it was altered. *Id.*

Indeed, Shaun Martinez, Plaintiffs' designated Rule 30(b)(6) witness on the topic of Plaintiffs' use of various email addresses, admitted that the email production showed that certain emails had been "recovered," meaning that the emails were deleted and "something else was put in its place." (*See* Deposition of Shaun Martinez ("Martinez Depo.") at 32:11-33:5, Exhibit E to Zaitlen Dec.) However, Mr. Martinez, who testified that he was the only individual with access to Plaintiffs' email files (*Id.*, 46:21-47:1) could offer no explanation at all for this. (*Id.*, 37:20-38:25).

### III. ARGUMENT

#### A. Legal Standard

Plaintiffs and their counsel should be sanctioned under Fed. R. Civ. P. 26 and 37 and under thus Court's inherent authority. Fed. R. Civ. P. 37(e) states in relevant part:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take

5
602776178v3

reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Rule 26 states in relevant part:

By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(3) Sanction for Improper Certification. If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 CIV. 2493 KBF, 2014 WL 3844796, at *12 (S.D.N.Y. Aug. 5, 2014) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Such sanctions may include dismissal of the claims. *Id.* at 45 (citing *Roadway Express, Inc. v. Piper*,

447 U.S. 752, 746 (1980)). "To support the imposition of sanctions, the innocent party must prove the following three elements: that the spoliating party (1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind upon destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defense." *Regulatory Fundamentals*, 2014 WL 3844796, at *12.

### B. Terminating Sanctions are Warranted for Plaintiffs' and Counsel's Misconduct

Plaintiffs and their counsel (at least Plaintiffs' second set of counsel) have engaged in serious discovery misconduct that warrants dismissal of Plaintiffs' claims. "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Goodyear*, 167 F.3d at 779; *535 Broadway Associates v. Commercial Corporation of America*, 159 B.R. 403, 407 (S.D.N.Y.1993). While dismissal is viewed as a harsh sanction, "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where ... they are clearly warranted." *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 735 (2d Cir. 1987); *see also 535 Broadway Associates*, 159 B.R. at 407 ("this circuit's recent decisions have made clear that the era when courts shied away from the imposition of the full range of sanctions enumerated in Rule 37, including dismissal, is a thing of the past.").

Fed. R. Civ. P. 37 applies to Plaintiffs' conduct – in fact, Plaintiffs' conduct is worse than that set forth in Rule 37. Not only have Plaintiffs failed to preserve relevant documents, Plaintiffs intentionally altered emails and attempted to destroy the originals while producing the falsified emails. Accordingly, all sanctions under Fed. R. Civ. P. 37(e), including terminating sanctions, are available.

7

The signature requirement of Rule 26 is also implicated. Plaintiffs' second set of counsel signed discovery responses indicating that Plaintiffs would produce documents in responses to the following discovery request:

> All DOCUMENTS relating to Your contentions that Defendant had knowledge of Plaintiffs' alleged rights to Slamxhype (including but not limited to those referenced in paragraph 33 of Your First Amended Complaint alleging that Defendant and/or Vahe Estepanian ("Fletch Estepanian") was made "aware that Plaintiffs had acquired the rights in and to the trademark SLAMXHYPE and the SLAMXHYPE Website, and of Plaintiffs' plans to expand the SLAMXHYPE business into a chain of retail clothing stores", as well as paragraphs 34-35

However, in producing documents responsive to that request, Plaintiffs produced the fraudulent emails. Plaintiffs' second set of counsel then used those emails in Mr. Estepanian's deposition. Such conduct violates Rule 26, which makes sanctions mandatory. *See Chambers*, 501 U.S. at 51 (imposition of sanctions is mandatory for a violation of Rule 26(g)). Even if Plaintiffs' counsel was unaware that Plaintiffs had altered the emails before production, the fact that the email addresses in Plaintiffs' emails did not match those of Defendants should have caused Plaintiffs' counsel to investigate further and question the veracity of the emails rather than trust Plaintiffs and use the falsified emails as depositions exhibits. See *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 98 Civ. 10175, 2002 WL 59434, at *8 (S.D.N.Y. Jan. 16, 2002) (sanctions available against attorney where "all of facts available to [counsel] should have convinced a lawyer of even modest intelligence that there was no reasonable basis on which they could rely on [their clients'] statements").

Plaintiffs have engaged in discovery misconduct much more egregious than the negligent deletion of documents or the refusal to attend deposition – conduct that has led to dismissal in other cases. Plaintiffs instead altered email sender and recipient information, attempted to delete the original emails, produced the altered emails, and then used those doctored emails in

8

deposition, all in an effort to prove that Defendants were aware of Plaintiffs' use of SLAMXHYPE prior to adopting the FLASHXHYPE trademark. Plaintiffs only failed to perpetrate this fraud because Defendants still had the original emails in their possession, and further because Plaintiffs did a "bad" job in their deletion and spoliation efforts. Had Defendants deleted those emails (sent and received months before this litigation was instituted or even contemplated), Plaintiffs' nefarious efforts would have succeeded

1. <u>Plaintiffs Had Control over the Evidence and an Obligation to Preserve It</u>

There is no question that Plaintiffs had control over the subject emails (Plaintiffs ultimately produced the altered emails) or that Plaintiffs had a duty to preserve the emails in question – and certainly had a duty **not** to alter them. The duty to preserve evidence begins when a party reasonably anticipates litigation. *Regulatory Fundamentals*, 2014 WL 3844796, at *12. While it is unclear when Plaintiffs first anticipated litigation, Plaintiffs filed their initial complaint in July 2014 and produced the fraudulent emails to counsel for Defendants on February 19, 2015. The native files for those emails were provided by Plaintiffs' third set of counsel as ordered by Magistrate Judge Francis on July 30 (Dkt. 47). Plaintiffs therefore had a duty not to delete and/or alter the original emails at the time they did so.

2. <u>Plaintiffs' Conduct was Willful and in Bad Faith</u>

Plaintiffs' alteration of the sender and recipient information in the emails was done willfully and in bad faith. "A finding of spoliation requires a culpable state of mind… A party is found to have acted with a sufficiently culpable state of mind [to warrant sanctions] when evidence was destroyed knowingly." *Regulatory Fundamentals*, 2014 WL 3844796, at *14. However, even negligence is sufficient for a finding of culpability for spoliation purposes. *Id.*; see also *Gutman v. Klein*, No. 03CV1570(BMC)(RML), 2008 WL 4682208, at *7 (E.D.N.Y. Oct. 15, 2008) (report and recommendation adopted, No. 03 CIV. 1570 (BMC), 2008 WL

602776178v3

5084182 (E.D.N.Y. Dec. 2, 2008)) ("the Second Circuit has held that negligence is a sufficiently culpable state of mind for spoliation").

Here, Defendants' forensic computer expert stated that the alteration of the email address information was done intentionally. Kunkel Decl. at ¶13. There is no way that the emails produced by Plaintiffs would show different email addresses other than having been altered. *Id.* Even if Mr. Kunkel's opinion is discounted, willfulness can be inferred by the fact that Plaintiffs' second set of counsel used the falsified emails in deposition in an attempt to get Mr. Estepanian to admit that he had received the @slamxhype.com emails prior to adopting the FLASHXHYPE trademark. There seems no question that Plaintiffs' actions were calculated to gain an undeserved litigation advantage.

3. The Evidence is Relevant to Plaintiffs' Claims

The emails are relevant to Plaintiffs' claim. In fact, they are relevant to the central factual issue in Plaintiffs' complaint – that Defendants were aware of Plaintiffs' alleged use of SLAMXHYPE before adopting FLASHXHYPE. Plaintiffs' sole intent in manipulating the data in the emails was to demonstrate, by means of altered emails sent to Defendants, that Defendants had such awareness. Therefore, the emails are clearly relevant.

Even if there is a challenge to the relevancy of the emails, a court may infer relevance when "a party acted in bad faith because bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party. *Gutman*, 2008 WL 4682208, at *7. Either way, the Court should find that the emails are highly relevant to Plaintiffs' claims.

4. Lesser Sanctions are Insufficient to Cure the Harm

The Court should dismiss Plaintiffs' claims because of the egregious nature of their conduct, along with the conduct of their attorneys. The prejudice to Defendants is substantial –

Plaintiffs have proven that they will do whatever is necessary, including falsifying evidence, to win this case. The fact that Plaintiffs' efforts were thwarted in this instance does not give Defendants, and should not give the Court, comfort that Plaintiffs have not or will not try again – and do (or already have done) a better job of covering their tracks.

To be clear, it is not necessary for Defendants to establish prejudice to warrant dismissal of Plaintiffs' claims here. *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 229 (S.D.N.Y. 2003) *adhered to on reconsideration*, No. 00 CIV. 3613 (LAP), 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ("the Union's assertion that the Met must show prejudice before a sanction may be ordered under Rule 37 is without merit."); *Miller v. Time–Warner Communications, Inc.*, No. 97 Civ. 7286, 1999 WL 739528 at *3 (S.D.N.Y. Sept. 22, 1999), (the court found dismissal warranted even though there was no prejudice to the moving party because the record indicated that the non-moving party and her attorney had committed perjury).

In any event, terminating sanctions have been granted in cases in which the party engaged in conduct less deceitful than that at issue here. For example, in *Communispond, Inc. v. Kelley*, No. 96 CIV. 1487 (DC), 1998 WL 473951, at *5-6 (S.D.N.Y. Aug. 11, 1998), the court granted default judgment against defendant for failure to comply with orders to produce documents and for misrepresenting that documents did not exist. In finding that default was the only appropriate sanction, the court noted that "even after defendants' deceptions have come to light, they still refuse to produce items of discovery responsive to Communispond's requests that they have in their possession." *Id.* at *6. The court also found prejudice to the plaintiff because it was forced to obtain discovery "in piecemeal fashion." *Id.* In *Metro. Opera Ass'n,*, 212 F.R.D. 178, 229, the court granted default judgment under Rules 26 and 37 for failure of defendant and

11

its counsel to adequately search for relevant and responsive information and documents. In *Gutman*, 2008 WL 4682208, at *3–5, the court issued a terminating sanction where defendant's laptop was found by a forensic computer expert to have been tampered with during discovery, including the deletion of hundreds of documents hours before the laptop was to be produced for forensic imaging.

Courts have also imposed terminating sanctions in instances similar to those here. For example, in *Miller*, 1999 WL 739528 at *3, the court dismissed the plaintiff's claims where she had erased handwritten notes she had made on documents during her employment in an effort to prevent the defendant from learning the information and then lied about erasing the notes under oath. The court stated:

> "No lesser sanction would be adequate to penalize plaintiff for her misconduct and to deter others from engaging in similar conduct in the future. As the Supreme Court said *in National Hockey League v. Metropolitan Hockey Club*, Inc., 427 U.S. 639, 96 S.Ct. 2778, (1976), 'here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'"

Likewise, in *Regulatory Fundamentals*, the defendant deleted emails, attempted to cover the deletion by terminating his email account, and then attempted to cover his tracks by emailing the email hosting company and asking for access to his account –blaming the company for the unavailability of the emails. The court similarly found that attorneys' fees and an adverse inference were insufficient because they would not sufficiently penalize defendant or deter others from engaging in such misconduct.

Under the rationale of all of the above cases, the Court should grant dismissal of Plaintiffs' claims. Plaintiffs' conduct was willful and in bad faith, and was an attempt to perpetrate a fraud on Defendants and, ultimately, the Court. Lesser sanctions would be

insufficient to penalize Plaintiffs or to deter others from falsifying information in an attempt to prove the central factual issue in the case.

### C. If the Court Does Not Dismiss Plaintiffs' Claims, Preclusion and an Adverse Instruction are Necessary

While terminating sanctions are warranted here, Defendants defer to the Court in determining the appropriate sanctions for Plaintiffs' attempted deception and destruction of evidence. Accordingly, if the Court does not dismiss Plaintiffs' claims, it must issue other sanctions. These sanctions are insufficient to cure the harm here, but are necessary in the absence of dismissal.

Among the sanctions available under Rules 26 and 37 are preclusion and adverse inferences. See *Gutman*, 2008 WL 4682208, at *12, fn. 10 (listing sanctions available "in a Rule 37 context" to include); *Milliken & Co. v. Bank of China*, 758 F.Supp.2d 238 (S.D.N.Y.2010) (defendant precluded under Fed. R. Civ. P. 26 from offering evidence in support of defense when it failed to produce documents relevant to that defense); *Goodyear Tire & Rubber Co.*, 167 F.3d at 780 (adverse inferences and an order precluding the plaintiff from offering evidence on the issues were available sanctions where dismissal was not appropriate).

Accordingly, if the Court does not dismiss Plaintiffs' claims, Plaintiffs should be precluded from arguing or offering evidence that Defendants were aware of Plaintiffs' use of SLAMXHYPE prior to adopting FLASHXHYPE, should be precluded from offering the tampered-with emails into evidence, and the jury should be informed that Plaintiffs intentionally altered emails and instructed to infer that Plaintiffs did so because the valid emails were unhelpful to Plaintiffs' case.

### D. In Any Event, Plaintiffs Must Pay Defendants' Costs and Reasonable Attorneys' Fees

In addition to the other sanctions granted, Plaintiffs and their counsel must pay the costs and reasonable attorneys' fees incurred by Defendants as a result of this misconduct. Such sanctions are within the discretion of the Court under Rules 26 and 37 and the Court's inherent power. See *Chambers*, 501 U.S. at 43 (sanction of attorneys' fees is within a court's inherent authority); *Metro. Opera Ass'n*, 212 F.R.D. at 231 (granting terminating sanctions along with "additional sanctions in the form of attorneys' fees necessitated by the discovery abuse by defendants and their counsel").

Here, Plaintiffs and their counsel (at least Plaintiffs' second set of counsel) are responsible for the discovery misconduct and both should be sanctioned for it. Defendants' costs, including the cost of the forensic computer expert who uncovered the deception, and reasonable attorneys' fees should be reimbursed by Plaintiffs and their counsel.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court issue an order sanctioning Plaintiffs for abuse of the discovery process. While Defendants submit that terminating sanctions are warranted here, given the egregious nature of the discovery misconduct, Defendants acknowledge that it is up to the discretion of the Court in determining

what sanctions are appropriate. In any event, Plaintiffs and/or their counsel must pay Defendants' costs and reasonable attorneys' fees in an amount to be proven.

Dated: September 16, 2015                        Respectfully Submitted,

/s/ Richard Zaitlen
Richard Zaitlen
richard.zaitlen@pillsburylaw.com
*Admitted Pro Hac Vice*
Jennifer Seigle
jennifer.seigle@pillsburylaw.com
*Admitted Pro Hac Vice*
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
Tel: 213.488.7100

*Attorneys for Defendants Black Lineage, Inc., and Vahe Estepanian a/k/a Fletch Estepanian*